Scott George
SEEGER WEISS, LLP
sgeorge@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA  19102
Telephone:  (215) 564-2300
Facsimile:  (215)851-8029

*Attorney for Individual and Representative*
*Plaintiff Marie Rita Kennedy-Lebar*
*(Additional attorneys are listed on the signature page)*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE RITA KENNEDY-LEBAR, on behalf of herself  and all others similarly situated, | Case No._____ |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR:** |
| v. | (1) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* |
| VOLKSWAGEN GROUP OF AMERICA, INC., | (2) Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* |
| Defendant. | (3) Breach of Express Warranty |
| | (4) Breach of Implied Warranty |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Marie Rita Kennedy-Lebar, on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      Plaintiff  Marie Rita Kennedy-Lebar brings this action for herself and on behalf all persons who purchased or leased any 2005-2009 Audi vehicles equipped with an optional High Intensity Gas Discharge headlamp system with xenon bulbs ("HID Headlamp System") manufactured, distributed, and sold by defendants Volkswagen Aktiengesellschaft, a.k.a. Volkswagen AG ("VWAG"), Volkswagen Beteiligungs Gesellschaft m.b.H. a.k.a. Volkswagen BG ("VWBG"), Volkswagen Group of America Inc. ("VWGoA"), Audi Aktiengesellschaft ("Audi AG") , Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Audi Inc."), Audi of America LLC ("AOA LLC") and Volkswagen de Mexico, S.A. De C. V. ("VWM") (collectively, "Defendants" or "VW"), including but not limited to the following years and models: 2008-2009 Audi TT, 2006-2009 Audi A3, 2005-2007 Audi A4, 2007-2009 Audi A4 Cabriolet, and 2007 Audi Q7 (collectively, "Audi Vehicles" or "Class Vehicles").

2.      Because of a defect in the HID Headlamp System, the Audi Vehicles' headlamps appear to function normally when first turned on, but will sporadically shut off while the vehicle is being driven ("the HID-Headlamp-System defect").  Audi Vehicles' drivers thus temporarily lose illumination from one or both headlamps at recurring and unpredictable intervals, exposing them and other drivers to significant and unreasonable danger.  The standard headlight system does not suffer from the same problems and defect.

3.      Since at least 2005, VW has known that Audi Vehicles equipped with the optional HID Headlamp System suffer from intermittent headlamp

failures due to an underlying systemic problem.  Rather than alerting Audi Vehicle owners of this safety hazard and offering to repair their vehicles, VW has concealed the problem from its customers.  Indeed, to avoid liability for the HID-Headlamp-System defect, VW has attempted to characterize Class Members' problems as isolated issues of prematurely burned-out bulbs and has argued that it has no obligation to fix the problem or to reimburse consumers who have incurred costs associated with replacing the lamps while the underlying defect remains.  Other times, VW has argued that it is unable to repair the problem because the headlamp failures did not manifest themselves during consumers' repair visits at the various dealerships, even though VW has known—or should have known—about the headlamp failures for years and that they intermittently fail and are defective.

4.      Had Plaintiff and the other Class Members at the time of purchase or lease known about the HID-Headlamp-System defect contained in the Audi Vehicles and/or the monetary costs associated with repairing the defect, they would not have paid extra to purchase the optional (and defective) HID Headlamp System, or would  not have bought the vehicles.

5.      As a result of VW's misconduct alleged herein, Plaintiff and Class Members have been harmed and have suffered actual damages in that the HID Headlamp Systems in the Audi Vehicles are experiencing continuous and progressive failure problems, and have intermittently failed and will continue to intermittently fail before their expected useful life has run.

## PARTIES

### Plaintiff

6.      Plaintiff Marie Rita Kennedy-Lebar ("Plaintiff") is a Florida citizen who resides in Lake Worth, Florida.  Plaintiff bought a 2005 Audi A4, on or

about May 2006, from an authorized Volkswagen dealership in West Palm Beach, Florida, paying extra for the optional HID Headlamp System.

7.      Plaintiff purchased the vehicle primarily for personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed and/or warranted by Defendants and bears Vehicle Identification Number WAUDG68E45A519066.

8.      On or about August 2009, Plaintiff's son Shawn Kennedy noticed that the vehicle's headlamps were not functioning.  The headlamps worked only intermittently, flickering and shutting off without warning before they came back on again while driving.  Plaintiff and her son, Mr. Kennedy, have experienced the intermittent headlamp failure numerous times since the purchase of the vehicle.  Indeed, Mr. Kennedy has experienced the intermittent headlamp failure nearly every night since August 2009.  Each time the headlamps shut off without warning while Mr. Kennedy is driving the vehicle, including when he drives the vehicle on the freeway and at night.

9.      On or about August 2009, Mr. Kennedy took the vehicle to an authorized VWGoA dealership in Richmond, Virginia, in order to fix the headlamps.  However, the dealership was unable to replicate the problem and told him that nothing could be done.

10.     On or about July 2010, Plaintiff took the vehicle to the authorized VWGoA dealership in West Palm Beach, Florida.  During this repair visit, Plaintiff was told that replacing and repairing the flickering HID Headlamp System would cost her approximately seven hundred dollars ($700) to eight hundred dollars ($800).

11.     Safe and reliable headlamps were and are important to Plaintiff.  Had Defendants informed her that the headlamps in the optional HID Headlamp System shut off intermittently, she would not have purchased the HID Headlamp

System.  In addition, had Defendants informed her that her headlamps were shutting off intermittently due to an inherent defect in the HID Headlamp System, she would not have paid for diagnoses that did not address the root cause of the intermittent headlight failures.

**Defendant**

12.    Defendant Volkswagen AG ("VWAG" ) is a foreign corporation headquartered at Berliner Ring 2  38440 Wolfsburg, Federal Republic of Germany. VWAG engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling and distributing motor vehicles, including the Class Vehicles, in the United States. VWAG also drafted and printed the owner's manual that accompanied the Class Vehicles. Through its wholly owned subsidiaries and/or agents, VWAG markets its products in a continuous manner in the United States, including the State of New Jersey. VWAG is the parent of, controls and communicates with the other Defendants, including VWGoA and Audi AG (VWAG owns 99.55 % of Audi AG as of 2009) concerning virtually all aspects of the Class Vehicles distributed in the United States. VWAG maintains a Detroit Office and a VWAG Investor Relations office at 2200 Ferdinand Porsche Dr., Herndon, VA 20171 and has filed forms with the SEC, including Form F-6, the Registration Statement Under the Securities Act of 1933.  Defendant VWAG is and at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within the District of New Jersey in the State of New Jersey by selling, advertising, promoting and distributing Volkswagen and Audi motor vehicles. Service of process on this defendant is proper by serving it via its wholly owned subsidiary and agent, VWGoA at 2200 Ferdinand Porsche Dr., Herndon, VA 20171, its offices as represented in the SEC filings and annual

reports and website at c/o Corporation Trust Company at West Trenton, New
Jersey 08628.

13.     Defendant Volkswagen Beteiligungs Gesellschaft m. b. H.
("VWBG") is a German limited liability company wholly-owned by VWAG and
is headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of
Germany. It is believed that VWBG engaged in the business of designing,
engineering, manufacturing, testing, marketing, supplying, selling and
distributing motor vehicles, including the Class Vehicles, in the United States.
VWBG also participated in the drafting and printing of the owner's manual that
accompanied the Class Vehicles. Service of process on this defendant is proper
by serving it via its wholly owned subsidiary and agent, VWGoA at 2200
Ferdinand Porsche Dr., Herndon, VA 20171, or c/o Corporation Trust Company
at Bear Tavern Road, West Trenton, New Jersey 08628.

14.     Defendant Volkswagen Group of America, Inc. ("VWGoA") is a
New Jersey corporation.  In April 2008, Volkswagen of America, Inc. was
restructured and renamed Volkswagen Group of America, Inc. ( "VWGoA" ) and
moved its principal place of business from Auburn Hills, MI to 2200 Ferdinand
Porsche Dr., Herndon, VA 20171, and, for purposes of 28 U.S.C. §1441(b), is a
citizen of New Jersey. Defendant VWGoA was and/or is a wholly owned
subsidiary of VWAG and/or VWBG.  At all relevant times, Defendant VWGoA
imported, distributed, sold and/or serviced Volkswagen and Audi vehicles,
including the Class Vehicles.

15.     Defendant Audi AG ("Audi AG") is a foreign corporation located at
Auto-Union-Str. 2 D-85045 Ingolstadt, Deutschland.  Audi AG engaged in the
business of designing, engineering, manufacturing, testing, marketing, supplying,
selling and distributing motor vehicles, including Class Vehicles such as the Audi
A4 and A6 in the United States, including the state of New Jersey. Audi AG also

drafted and printed the owner's manual that accompanied the Class Vehicles. Through its subsidiary, Audi AG advertises, promotes and markets its products in a continuous manner in the United States of America, including the State of New Jersey.  Defendant Audi AG liaisons, coordinates and communicates with the other Defendants including VWAG, VWGoA, Audi Inc. and AOA LLC concerning virtually all aspects of its products distributed in the United States, including the State of New Jersey.  In April 2008, Audi AG moved its principal place of business from Auburn Hills, MI to 2200 Ferdinand Porsche Dr., Herndon, VA 20171.  As set forth in Audi AG's 2007 Annual Report, issued in 2008, AOA LLC is Audi AG's sales subsidiary in the United States and was fully consolidated into Audi AG effective January 1, 2007.  AOA LLC is the entity through which Audi AG sells Audi vehicles in the United States.  AOA LLC's assets and revenues flow directly onto the balance sheet, income statement and financial statements of Audi AG.  Further, as set forth on Audi AG's Website ("Statement of interests held by AUDI AG and the Audi Group according to Sections 285 and 313 of the German Commercial Code (HGB) at December 31, 2009"), "AUDI AG exercises control [over AOA LLC] as defined by IAS 27.13, Sentence 2."  International Accounting Standard ("IAS") 27 mandates the consolidation of separate financial statements for a group of entities under the control of a parent. IAS 27.13, Sentence 2 states that control is presumed even where the parent does not acquire more than half the enterprise's voting rights if the parent has the power to govern the financial and operating policies of the other enterprise under a statute or agreement. Service of process on this defendant therefore is proper by serving it via its subsidiary and agent, AOA LLC at 2200 Ferdinand Porsche Dr., Herndon, VA 20171 or c/o Corporation Trust Company at 1209 Orange Street, Wilmington Delaware 19801.

16.     Audi of America, LLC ("AOA LLC") is a limited liability corporation incorporated in Delaware and located at 2200 Ferdinand Porsche Dr., Herndon, VA 20171.  AOA LLC is the sales subsidiary of Audi AG.  AOA LLC, was consolidated into Audi AG effective January 1, 2007 pursuant to IAS 27.13, thereby acknowledging that Audi AG has the power to govern the financial and operating policies of AOA LLC under a statute or agreement. VWGOA holds 100% of the shares of AOA LLC.

17.     Defendant Audi of America, Inc. or Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ( "Audi Inc.") is a New Jersey corporation that, in April 2008, moved its principal place of business from Auburn Hills, MI to 2200 Ferdinand Porsche Dr. , Herndon, VA 20171, and, for purposes of 28 U.S.C. §§1441(b), is a citizen of New Jersey.  Defendant Audi Inc. is a division within Defendant VWGoA and was and/or is wholly owned by VWAG and/or VWBG, which was and/or is wholly owned by VWAG.  At all relevant times, Defendant Audi Inc. imported, distributed and sold Audi motor vehicles, including the Class Vehicles.

18.     Defendant Volkswagen de Mexico, S. A. De C. V. ( "VWM" ) was and/or is a subsidiary of VWAG and is located at Autopista Mexico Puebla, Km. 116 San Lorenzo Almecatla Cuautlancingo, Puebla C.P. 72008 Mexico. At all relevant times, Defendant VWM manufactured Class Vehicles including the Jetta. Defendant VWM manufactures two thirds of Volkswagen vehicles sold in the United States. Service of process on this defendant is proper by serving it via its parent, VWAG, at 2200 Ferdinand Porsche Dr., Herndon, VA 20171.

19.     VW is a corporation organized and in existence under the laws of the State of New Jersey with substantial business operations relevant to the instant action focused in New Jersey.  At all times relevant herein, VW was engaged in the business of designing, manufacturing, constructing, assembling, marketing,

distributing, and selling automobiles and other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America.

20.     Defendants VWAG, VWBG, VWGoA, Audi AG, Audi Inc., AOA LLC and VWM are collectively referred to herein as "Volkswagen" or "Defendants."

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Defendants because they either are registered to conduct business in New Jersey;  have sufficient minimum contacts in New Jersey; or otherwise intentionally avail themselves of the markets within New Jersey through the promotion, sale, marketing, and distribution of its vehicles to render the exercise of jurisdiction by this Court proper and necessary. Moreover, Defendant's wrongful conduct (as described herein) emanates from New Jersey and foreseeably affects consumers in New Jersey and throughout the United States.

22.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

23.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants transact business in this District, are subject to personal jurisdiction in this District, and therefore are deemed to reside in this District, within this State.  Many of the acts and transactions alleged herein, including the sale and/or leasing of the Class Vehicles, the dissemination of materially false and misleading materials including, inter alia, owner's manual, maintenance books, other marketing materials, and contract negotiation, occurred in this District.  Additionally, Defendants distribute and inject vehicles within the stream of commerce into this district.  Defendants, directly and through their agents

regularly transact business and otherwise derive substantial revenue in New Jersey and the United States.

## FACTUAL ALLEGATIONS

24.     For years, VW has designed, manufactured, distributed, sold, and leased the Audi Vehicles.  VW has sold, directly or indirectly, through dealers and other retail outlets, thousands of Audi Vehicles equipped with the HID Headlamp System in New Jersey and Nationwide.

25.     This lawsuit concerns certain Audi Vehicles that are equipped with a factory-installed and optional (and more expensive) HID Headlamp System, rather than the standard halogen headlamp system.  According to VW, HID stands for High Intensity Gas Discharge headlamps, a technical term for the electric arc that produces the light.  HID headlamps are designed to help increase driver visibility by producing more light and covering a broader area of the road than ordinary and less expensive halogen headlamps.

26.     According to VW, HID headlamps are superior to halogen headlamps (a less expensive headlamp option for the VW Vehicles) because the the amount of light produced is greater than a standard halogen bulb.  HID lights also consume less power and are intended to last longer than halogen lights.

27.     The factory-installed HID Headlamp System in the Audi Vehicles is defective in that one or both headlamps repeatedly stop working while the vehicle is being driven.  The headlamps will properly illuminate when they are first turned on, but they sporadically shut off while the vehicle is in use; the lights will then appear to be functioning normally again a short time later, typically after the driver toggles the lights off and back on again.  These intermittent headlamp failures are repeated and unpredictable, resulting in a great deal of confusion and concern for Class Vehicle owners.

28.     VW has a duty to disclose the HID-Headlamp-System defect to VW Vehicles owners, among other reasons, because the defect poses an unreasonable safety hazard; because VW had and has exclusive knowledge or access to material facts about the VW Vehicles' HID Headlamp System that were and are not known or reasonably discoverable by Plaintiff and Class Members; and because VW has actively concealed the HID Headlamp System defect from its customers.

**The HID-Headlight-System Defect Poses An Unreasonable Safety Hazard.**

29.     The defective HID Headlamp System poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Audi Vehicles.  Headlamps are a critical safety feature that functions both to illuminate the road for the driver and to notify other vehicles and pedestrians of the vehicle's presence.  A defect that causes one or both of a vehicle's headlamps to intermittently shut off unreasonably increases the risk of automobile accidents and moving-violation penalties.

30.     VW has refused to acknowledge the HID-Headlamp-System defect publicly, and has instead taken the position that headlamp bulbs can and do fail and that this is a maintenance issue not covered under its warranty.

31.     The symptoms experienced and reported by thousands of drivers of the Audi Vehicles—where headlamps suddenly shut off while the vehicle is on the road, then appear to be working fine for a while, only to shut off again at repeated and unexpected intervals in the future—is far different from the routine case of a burned-out bulb that may be considered to be a maintenance issue.

32.     Upon information and belief, the root cause of intermittent headlamp failures in VW Vehicles is not in the bulbs at all, but other defects contained in the Audi Vehicles, including but not limited to defects contained in the HID

Headlamp System's headlamp assembly and control unit, and related parts and circuitry.

33.     Unlike a headlamp failure from a burned-out bulb, the headlamp failures experienced by Class Members as a result of the HID-Headlamp-System defect are much more frequent; they occur repeatedly; they cannot be reliably detected or prevented through routine inspections or maintenance; and they persist even after a new bulb is installed.  Headlamp failures from the HID-Headlamp-System defect are also much more likely to affect both headlamps, resulting in a total loss of headlamp illumination.

34.     The owners of Audi Vehicles know what a burned-out bulb is, but they do not know what is wrong with their vehicles' headlamps.  Whereas a routine inspection will often reveal a burned-out bulb, the Audi Vehicles' headlamps work normally when switched on but occasionally shut off while the vehicle is in use.

35.     Even after owners or lessees of Audi Vehicles notice that one or both of their headlamps have shut off, it often takes several occurrences before they are certain that something is wrong.  In times between, the headlamps appear to be functioning normally, both to consumers and to trained technicians.

36.     When the owners of Audi vehicles complain of intermittent headlamp problems at a VW dealership, the dealerships either do nothing (because they cannot duplicate the customer's experience) or simply replace all or part of the HID Headlamp System with equally defective parts.  Replacing the HID Headlamp System is expensive—typically amounting to between several hundred dollars and close to $2,000 depending on how much of the system is replaced—yet this is ultimately ineffective.  Many owners of Audi vehicles have had all or part of their HID Headlamp Systems replaced multiple times, only to have the intermittent headlamp failures reoccur each time.

37.     Hundreds, if not thousands, of purchasers and lessees of the Audi Vehicles have experienced problems with HID headlamp failures.  Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread and dangerous, and that it manifests without warning. The complaints confirm that Class Members' experiences are not simply about burned-out bulbs or other maintenance issues.  Rather, consumers are confused as to why their headlamps work only intermittently, concerned about their safety, and upset that they are often charged hundreds, if not thousands, of dollars for "repairs," only to have the problems recur a short time later.  The complaints also indicate Defendants' awareness of the defect and how potentially dangerous the defective condition is (note that spelling and grammar mistakes remain as found in the original):

- <u>NHTSA Complaint</u>:  INTERMITTENT HEADLIGHT MALFUNCTION. OVER THE COURSE OF A YEAR OF OWNERSHIP, THE RIGHT HEADLIGHT HAS MALFUNCTIONED (TURNED OFF), WITH NO CONSISTENT CAUSE APPARENT. JUST RECENTLY THE LEFT HEADLIGHT HAS STARTED TO MALFUNCTION AS WELL. WHILE DRIVING BOTH HEADLIGHTS HAVE GONE OUT! THIS CONDITION IS BOTH UNSAFE, AND ILLEGAL – AS MANY STATES WILL ISSUE A TRAFFIC VIOLATION FOR DRIVING WITH A NON-FUNCTIONING HEADLIGHT. THE RIGHT LIKE MALFUNCTIONS EVERY TIME I USE THE LIGHTS AND THE LEFT HAS MALFUNCTIONED 4 TIMES IN THE PAST MONTH, THE HEADLIGHT FLICKERS, THEN GOES OUT, BUT WILL COME BACK ON WHEN THE LIGHTS ARE TURNED OFF THEN ON AGAIN. BUT THE FLICKERING OCCURS WITH IN

MINUTES OF SWITCHING THEM BACK ON. THE
DEALERSHIP HAS BEEN NOTIFIED OF THE PROBLEM AND
HAS CLAIMED THAT EVERYTHING IS FINE AND THEY CAN
NOT REPRODUCE. THEY HAVE SUGGESTED I WAIT UNTIL
BOTH GO OUT TO REPLACE THEM. NO PARTS HAVE BEEN
REPAIRED OR REPLACED, HOWEVER THEY HAVE
CLAIMED TO PERFORM A VISUAL INSPECTION OF THE
ELECTRICAL CONNECTIONS. ANNECDOTAL EVIDENCE
(CONVERSATIONAL, AND VIA INTERNET OWNERS'
FORUMS) SUGGESTS THAT THE PROBLEM IS WIDESPREAD
AMONG A SUBSTANTIAL PORTION OF AUDI'S MODEL
RANGE AND YEARS. *TR

- NHTSA Complaint:  I OWN AN AUDI A4 2.0T 2005.5 (B7). THE
DRIVER SIDE XENON HEADLIGHTS FLICKER
INTERMITTENTLY AND SHUT OFF. THIS IS NOT A
HEADLIGHT BULB ISSUE THE PROBLEM IS GETTING
WORSE. THE DEALER AWARE OF THIS AND IS NOT
TAKING RESPONSIBILITY BECAUSE OF THE COST. I HAVE
READ OF MANY OTHER OWNERS OF THIS MAKE AND
MODEL HAVING THE SAME PROBLEM. THIS HAS THE
POTENTIAL OF CREATING AN ACCIDENT. *TR

- NHTSA Complaint:  DIPPED HEADLIGHT WARNING AND
HEADLIGHTS FLICKERING. BROUGHT TO DEALER FOR
SERVICE SAID MAY NEED TO BE REPLACED $200-350
BECAUSE THEY HAVE TO TAKE ENTIRE BUMPER OFF. I
AM DRIVING THIS CAR BECAUSE MY FORMER 2001 A6
CAUGHT FIRE DUE TO HEADLIGHT PANEL IN WHICH

THERE WAS A RECALL FOR. CAR BURNT TO THE GROUND ON TOP OF A MOUNTAIN LEAVENING JUST THE FRAME. AUDI COULD NOT HAVE CARED LESS, OFFER ME A $2000 INCENTIVE FOR A NEW OR USED AUDI/VOLKSWAGEN. AFTER READING ALL OF THESE COMPLAINTS DUE TO LIGHT FLICKERING I AM SCARED TO DRIVE MY A4.

- NHTSA Complaint:  AUDI A4 2.0T AVANT – 2005. THERE ARE NUMEROUS COMPLAINTS ON THE XENON LIGHTS FLICKERING ON AND OFF. TODAY I HAD CARS PULLING OVER IN FRONT OF ME BECAUSE THEY THOUGHT I WAS AN EMERGENCY VEHICLE. THIS OVERWHELMING RESPONSE TO THE PROBLEM CAN BE SEEN AT: HTTP://FORUMS.VWVORTEX.COM/ZEROTHREAD?ID=39779 97 –AND- HTTP://FORUMS.AUDIWORLD.COM/SHOWTHREAD.PHP?P=2 3809262 THIS IS VERY DANGEROUS.

- NHTSA Complaint:  I DRIVE A 2005.5 AUDI A4 2.0T. WHEN I TURN MY HEADLIGHTS ON NEARLY HALF THE TIME THE RIGHT HEADLIGHT SHAKES, THEN FLICKERS, THEN TURNS OFF ONLY TO TURN BACK ON A FEW SECONDS LATER AND THE PROCESS CONTINUES THE ENTIRE DRIVE. UNLESS I TURN THE HEADLIGHTS FROM AUTO TO OFF AND THEN BACK TO AUTO AND IT SEEMS TO FIX THE PROBLEM DURING THIS TRIP. I'VE TAKEN THE CAR TO THE AUDI DEALER WHICH I PURCHASED FROM AND THEY TOLD ME THEY FIX IT, THE PROBLEM NOW THE CAR IS

OUT OF WARRANTY. THIS PROBLEM STILL CONTINUES TO THIS DAY. *TR

- Internet Complaint:  The left headlight of my 2006 Audi A4 quattro has this annoying – and dangerous – problem: 1. The left headlight flickers 2. It then turns itself off 3. The message "left dipped headlight" appears 4. The message is changed to a sign indicating that the lightbulb has failed.  If I turn the light off (Note: We're talking about driving at night here) and turn it back on again, the light will become normal again, for about a few minutes and then the cycle repeats itself.  This problem is intermittent. It has been occurring a lot recently with the cold weather. I can't tell for sure whether it is temperature related.  My Audi dealer said that Audi knows about this problem but doesn't know how to fix it – changing the light bulb doesn't solve the problem.  Has anyone encounter this problem and get Audi to fix it?

- Internet Complaint:  Audi is well aware of this chronic problem!!! I have had both headlights with this problem and both repaired FOR FREE despite my car being out of warranty!!!! You need to speak with the person in charge of repairs at the dealership and have him call Audi of America to get approval.  The problem is due to a faulty igniter.  This has all been well documented in dipped headlights!!!! Unfortunately as headlight technology becomes more sophisticated and safer for the driver there are more parts that can go bad and this is the problem.  The reason the dealer does not want to cover this defect is because the igniter costs $500.  Good luck!

- Internet Complaint:  I have a 06 audi and my left keeps going out. How did u people fix urs and how much did it cost?

## VW Has Exclusive Knowledge Of The HID-Headlamp-System Defect.

38.     VW had superior and exclusive knowledge of the HID-Headlamp-System defect, and knew that the defect was not known or reasonably discoverable by Plaintiff and Class Members prior to their purchase or lease of the Audi Vehicles.

39.     Only VW had access to information about the significant risk of intermittent headlight failure in the VW Vehicles equipped with HID Headlamp System through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

40.     The existence of the HID-Headlamp-System defect is a fact that would be considered material by a reasonable consumer deciding whether to purchase or lease a vehicle.  Had Plaintiff and other Class Members known that the Audi Vehicles' HID headlamp shut off intermittently, they would not have paid extra to purchase the optional (and defective) HID Headlamp System.

41.     Reasonable consumers, like Plaintiff, expect and assume that a vehicle's headlamps are safe and will not suddenly and repeatedly shut off during use.  Plaintiff and Class Members further expect and assume that VW will not sell or lease vehicles with known safety defects, such as the HID-Headlamp-System defect, and will disclose any such defects to its consumers when it learns of the defect.  They do not expect VW to fail to disclose the HID-Headlamp-System defect to them, to continually deny the defect and attempt to characterize it as nothing more than a burned-out bulb, and to charge them hundreds of dollars, if not thousands of dollars, to replace all or part of their HID Headlamp Systems with equally defective parts.

## VW Hides the Defect with Technical Service Bulletins

42.     VW acknowledged the HID Headlamp defect in several secret Technical Service Bulletins ("TSBs") that it provided to only its dealers.   For example,  in a secret TSB, dated August 4, 2009,  VW describes the HID-Headlamp-System defect, in part, this way:

> One xenon light on either side sporadically flickers or flashes and goes out.  When the headlamps are turned off and on again or at ignition cycle, the headlamps may function properly or exhibit the same behavior.

43.     After describing the problem, the 2009 TSB immediately instructs the VW dealers to "replace the Gas Discharge Bulb."

44.     The 2009 TSB for the free HID headlamp replacement, as well as other similar ones that VW has issued in the past, are primarily directed at replacing the HID headlamps of those consumers who make a repair visit to a VW.  However, the actual failure is in the Headlamp System which is not repaired through the process and not limited as a wear and tear item, but subject to the fullest extent of the Limited New Vehicle Warranty ("LNVW").

45.     Plaintiff is also informed and believes and based thereon alleges that Defendants are aware, and has been aware since 2005, if not before, that the replacement of the HID headlamps and/or any of its associated parts do not fix the HID Headlamp System defect.  Rather, VW has simply instituted it measures to minimize its exposure.  The TSB protocols VW established only prolong the amount of time that will elapse before the HID Headlamp Systems fail again, thus ensuring that the HID Headlamps will fail outside of warranty period, so that VW can unfairly shift financial responsibility for the HID-Headlamp-System defect onto consumers.

## **VW Has Actively Concealed The HID Headlight System Defect.**

46.    While VW has been fully aware of the HID-Headlamp-System defect in the Audi Vehicles, it has actively concealed the existence and nature of the defect from Plaintiff and Class Members at the time purchase or sale and thereafter.  Specifically, VW has:

    a.    failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Audi Vehicles, including their defective HID Headlamp System;

    b.    failed to disclose at the time of purchase or lease that the Audi Vehicles, including their HID headlamps, were not in good in working order, were defective, and were not fit for their intended purposes; and

    c.    failed to disclose or actively concealed the fact that the Audi Vehicles and their HID headlamps were defective, despite the fact that VW learned of such defects through consumer complaints as, as well as through other internal sources, as early as 2005, if not before.

47.    VW has concealed the defect from consumers by providing equally defective HID Headlamp System parts to its dealers for use in repairing Audi Vehicles' headlamp problems.  VW has thus tried to give consumers the impression that their headlamp problems are unique cases rather than part of a systemic defect.  Had VW informed consumers that their intermittent headlamp problems were the result of a systemic defect, they would not have incurred costs for diagnoses or for repairs that did not address the root cause of the intermittent headlamp failures.

48.     When consumers present their vehicles to an authorized VW dealer for repair of the HID Headlamp System, consumers are typically told that they must pay for the repair.  The cost of replacing just one HID headlamp bulb costs hundreds of dollars, while replacing the entire HID Headlamp System can cost as much as $2,000.  Because Class Members' HID Headlamp Systems are "repaired" with equally defective parts, Class Members continue to suffer from the HID-Headlamp-System defect and continue to be exposed to the risk associated with headlamps that unexpectedly shut off while the vehicle is being driven, thereby contributing to traffic accidents.  Many Class Members have paid multiple times to diagnose and/or repair their vehicle's HID Headlamp System, only to have their headlamp problems recur a short time later.

49.     To this day, VW still has not notified Plaintiff and the Audi Vehicle owners and lessees that their vehicles suffer from a systemic defect that causes intermittent headlamp failures, implemented a reliable fix for the defect, or offered to reimburse consumers for monies they paid to diagnose and/or repair the problem.

50.     VW has caused Class Members to expend money at its dealerships to repair or replace the Audi Vehicles' defective HID Headlamp System, despite VW's knowledge of the defect.  Moreover, where VW replaced the Audi Vehicles' HID headlamps at its dealerships, Defendants utilized equally defective parts such that the defect was not corrected even though Defendants informed consumers that the defect was corrected.

## TOLLING OF THE STATUTE OF LIMITATIONS

51.     Since the defects in the design or manufacturer of the Audi Vehicles and their HID Headlamp System cannot be detected until the defect manifest itself, Plaintiff and the Class Members were not reasonably able to discover the

problem until after purchasing or leasing the Audi Vehicles, despite their exercise of due diligence.

52.     Plaintiff and the Class Members had no realistic ability to discern that the HID Headlamp System was defective until they intermittently failed.  In addition, despite their due diligence, Plaintiff and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the HID Headlamp System was concealed from them until manifestation of the intermittent failure.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the Class Members.

53.     Upon information and belief, VW has known of the defect in the Audi Vehicles and their HID Headlamp System since at least since 2005, if not earlier, and has concealed from or failed to alert owners and lessees of the Audi Vehicles of the defective nature of the HID Headlamp System.

54.     Any applicable statute of limitation has therefore been tolled by VW's knowledge, active concealment, and denial of the facts alleged herein.  VW is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Audi Vehicles and their HID Headlamp System.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this lawsuit as a class action on behalf of herself and all other persons who reside in the United States similarly situated as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

The Class is defined as: All Persons who purchased or leased any 2005-2009 Audi vehicles equipped with an HID Headlamp System.

56. Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Classes definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

57. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of the various states.

58. Typicality: The claims of representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, purchased and leased a Audi Vehicle designed, manufactured, and distributed by VW in which the HID Headlamp System is defective. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that she has incurred or will incur the cost of repairing or replacing HID Headlamp System and its related parts. Furthermore, the factual bases of VW's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

59.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

a.   whether Audi Vehicles suffer from the HID-Headlamp-System defect;

b.   whether the HID-Headlamp-System defect constitutes an unreasonable safety risk;

c.   whether Defendants know about the HID Headlight System defect and, if so, how long Defendant has known of the defect;

d.   whether the defective nature of the HID Headlight System constitutes a material fact;

e.   whether Defendant have a duty to disclose the defective nature of the HID Headlight System to Plaintiff and Class Members;

f.   whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

g.   Whether Defendants knew or reasonably should have known of the HID-Headlamp-System defect in the Audi Vehicles before it sold or leased them to Class Members;

h.   Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with its Audi Vehicles and for the costs and expenses of repair and replacement of Audi Vehicles and their defective HID Headlamp System;

i.   Whether Defendants violated the New Jersey Consumer Fraud Act;

      j.      Whether Defendants breached its implied and express warranties with Plaintiff and the Class.

60.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously

61.    <u>Predominance and Superiority</u>: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
### (Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*)

62.    On behalf of herself and all others similarly situated, Plaintiff realleges as if fully set forth, each and every allegation set forth herein.

63.    Plaintiff, the class members and Defendants are "persons" within the meaning of N.J.S.A. 56:8-1.

64.     At all relevant times, Defendants conducted trade and commerce within the meaning of  the N.J.C.F.A.

65.     The N.J.C.F.A. is a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory and common law schemes.

66.     VW's practices, acts, and conduct as described above, were intended to induce and did induce, Plaintiff and other Class members to purchase or lease the Class Vehicles with defective HID Headlamp Systems and to prevent legitimate claims for reimbursement for necessary repairs to the HID Headlamp Systems or otherwise to minimize VW's financial exposure resulting from the defect.

67.     VW's practices, acts, and conduct violated the N.J.C.F.A in that:

   a.   VW actively concealed from Plaintiff and other Class members that the HID Headlamp Systems were defective;

   b.   VW failed to give adequate warnings and notices regarding the defect to Plaintiff and other Class members;

   c.   VW failed to disclose to Plaintiff and other Class members and/or actively concealed the fact that the HID Headlamp System was defective and prone to premature failure causing the headlamps to cease functioning;

   d.   VW sought to further conceal the defect by ascribing the failure to regular "wear and tear" of the lamps, when this was untrue; and

   e.   VW intentionally made such concealment, and failed to make such disclosures, with the intent to defraud consumers like

Plaintiff and other Class members.

68.    Plaintiff and other Class members have suffered ascertainable loss in the form of payments for diagnostics and repairs and other costs attendant to the kinds of costs which are consequent to the defect in the HID Headlamp System, including diminished value of the Class Vehicles.

## SECOND CAUSE OF ACTION
### (For Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)

69.    Plaintiff, on behalf of herself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

70.    Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

71.    VW is a "supplier" and "warrantor" within the meaning of sections 2301(4)-(5).

72.    The Class Vehicles are "consumer products" within the meaning of section 2301(1).

73.    VW's express warranty is a "written warranty" within the meaning of section 2301(6).

74.    VW breached the express warranty by failing to fully and truly repair the underlying defect which is covered by the fullest extent of the LNVW, and not the limited extent of wear and tear items.

75.    VW's breach of the express warranty has deprived Plaintiff and the other Class members of the benefit of their bargain.

76.    The amount in controversy of the Plaintiff's individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets

or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

77.     Plaintiff notified VW of the breach within a reasonable time and they failed to cure the defect.  Specifically, Plaintiffs brought their vehicles in for service to a registered VW dealership.  Defendants failed to cure the defect but instead serviced the vehicles as if there were no underlying defect in the HID Headlamp Systems, which merely masked the defect.  VW was also on notice of the defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the HID Headlamp System or a component thereof, and through its own maintenance records.

78.     VW has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiff and other Class members brought their vehicles in for diagnoses and repair of their HID Headlamp Systems.

79.     As a direct and proximate cause of VW's breach of written warranty, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial.  Plaintiff and Class members damages, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

### THIRD CAUSE OF ACTION
**(For Breach of Express Warranty)**

80.     Plaintiff, on behalf of herself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

81.     VW provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became part of the basis of the bargain.  Accordingly, VW's express warranty is an express warranty under New Jersey law.

82.     The HID Headlamp System and its component parts were manufactured and/or installed by VW in the Class Vehicles and are covered by the express warranty.

83.     VW breached the express warranty by failing to fully and truly repair the underlying defect which is covered by the fullest extent of the LNVW, and not the limited extent of wear and tear items.

84.     Plaintiff notified VW of the breach within a reasonable time and VW failed to cure the defect.

85.     As a direct and proximate cause of VW's breach, Plaintiff and the other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, that is, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.  Additionally, Plaintiffs and the other Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

86.     Plaintiff and the other Class members are entitled to legal and equitable relief against VW, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

### FOURTH CAUSE OF ACTION
**(Breach of Implied Warranty)**

87.     Plaintiff, on behalf of herself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein

88.     Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

89.     Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their HID headlamps suffer from a defect that can put the lives of its occupants and other drivers who share the road with them at risk.

90.     Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Clas Vehicles and their HID Headlamp System were manufactured, supplied, distributed, and/or sold by VW were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their HID Headlamp System would be fit for their intended use while the Class Vehicles were being operated.

91.     Contrary to the applicable implied warranties, the Class Vehicles and their HID Headlamp System are not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their HID Headlamp System.

92.     Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for judgment as follows:

A.      For an order certifying the plaintiff Class and appointing Plaintiff and her counsel to represent the Class;

B.      For an order awarding Plaintiff and the members of the Class damages, consequential damages, specific performance, and/or rescission;

C.      For an order awarding Plaintiff and the members of the Class restitution, or other equitable relief as the Court deems proper;

D.      For an order enjoining Defendants from continuing to engage in unlawful business practices as alleged herein;

E.      For an order awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest;

F.      For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.      For an order awarding such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: October 5, 2010

Respectfully submitted

By: _____

Scott George
SEEGER WEISS, LLP
sgeorge@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA  19102
Telephone:  (215) 564-2300
Facsimile:  (215)851-8029

Payam Shahian (CA State Bar No. 228406)
STRATEGIC LEGAL PRACTICES, APC
e-mail: pshahian@slpattorney.com
1875 Century Park East., Suite 700
Los Angeles, CA 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Robert L. Starr (CA State Bar No. 183052)
THE LAW OFFICE OF ROBERT L.
STARR
e-mail: starresq@hotmail.com
23277 Ventura Boulevard
Woodland Hills, California, 91364-1002
Telephone: (818) 225-9040
Facsimile: (310) 225-9042

Marc Primo (CA State Bar No. 216796)
e-mail: mprimo@initiativelegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:  (310) 556-5637
Facsimile:  (310) 861-9051

*Attorneys for Plaintiff*